UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES HERSCHEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-02828-JMS-MJD |
| | ) |
| AARON WATTS Officer MPD, | ) |
| ERIC SMALL Officer, MPD, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This case arises from Plaintiff Charles Herschel's arrest in Muncie, Indiana in 2015. Mr. Herschel alleges that Muncie Police Officers Aaron Watts and Eric Small ("Defendants") subjected him to false arrest and imprisonment and deprived him of his rights under the Fourth Amendment to the United States Constitution by applying excessive force to him. Defendants have moved for summary judgment on all of Mr. Herschel's claims and have also moved to strike an exhibit. For the reasons described herein, the Court **GRANTS** Defendants' Motion to Strike, and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment.

## I.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the

materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative. *Montgomery v. American Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and

the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

A significant twist on the normal standard of review is at play here: when the record evidence includes a videotape of the relevant events, the Court should not adopt the non-movant's version of the facts when that version contradicts what is depicted on the videotape. *Scott v. Harris*, 550 U.S. 372, 379-80 (2007) (where plaintiff's account of high-speed chase contradicted videotape of chase, and there were no allegations that videotape was "doctored or altered in any way, nor any contention that what it depicts differs from what actually happened," lower court "should have viewed the facts in the light depicted by the videotape"). Accordingly, the Court relies primarily on videos taken from the body cameras of the police present at the scene of Mr. Herschel's arrest.[1]

## II.
### EVIDENTIARY OBJECTION

Prior to considering Defendants' Motion for Summary Judgment, the Court first considers an evidentiary objection. This is necessary because the resolution of the evidentiary objection

---

[1] Defendants filed a disc containing several videos containing body camera and surveillance footage at Filing No. 62. The Court will cite to those videos as follows:
- Exhibits D – Officer Watts' Body Camera Video Part 1 is Filing No. 62-1,
- Exhibit E - Officer Watts' Body Camera Video Part 2 is Filing No. 62-2,
- Exhibit F - Officer Watts' Body Camera Video Part 3 is Filing No. 62-3,
- Exhibit G - Officer Small's Body Camera Video Part 1 is Filing No. 62-4,
- Exhibit H - Officer Small's Body Camera Video Part 2 is Filing No. 62-5, and
- Exhibit I – Jail Surveillance Video is Filing No. 62-6.

impacts the scope of information that the Court can consider in analyzing the substantive arguments in the Motion for Summary Judgment.

In their reply brief, Defendants include a Motion to Strike a memorandum by Captain Steve Cox of the Muncie Police Department, entitled, "Complaint/Disciplinary Action – Officer Aaron Watts # 144," (the "Cox Memorandum"). [Filing No. 65 at 7-10.] Defendants argue that the Cox Memorandum is "inadmissible under Federal Rules of Evidence 401 and 407" because it is irrelevant and because it shows subsequent remedial measures. [Filing No. 66 at 2.] Mr. Herschel did not file a sur-reply addressing the admissibility of the Cox Memorandum.

Defendants' second argument is easily dispensed with for reasons recently explained by the U.S District Court for the Eastern District of Wisconsin, which held that a discharge recommendation for a police officer was "not itself a remedial measure; the remedial measure was [an officer's] termination." *J.M. v. City of Milwaukee*, 249 F. Supp. 3d 920, 931 (E.D. Wis. 2017) (quoting *Aranda v. City of McMinnville*, 942 F.Supp.2d 1096 (D. Or. 2013) ("By it terms, this rule is limited to measures that would have made the harm less likely to occur; it does not extend to post-incident investigations into what did occur. The reason [for finding Rule 407 inapplicable] is that such reports or inspections are not themselves remedial measures, and do not themselves even reflect decisions to take or implement such measures. Although such reports or inspections might represent the first or most preliminary steps that might eventually lead to decisions to make or implement changes, they are not themselves excluded under Rule 407.") (quotations and internal citations omitted)). Therefore, there is no basis to strike the Cox Memorandum under Rule 407.

However, Defendants' argument that the Cox Memorandum is irrelevant under Rule 401 finds support in *Thompson v. City of Chicago*, in which the Seventh Circuit affirmed the exclusion of a police department's general orders concerning the appropriate use of force because it was

irrelevant to a Fourth Amendment analysis.  472 F.3d 444 (7th Cir. 2006).  Specifically, the Seventh Circuit found that "[t]he fact that excessive force is not capable of precise definition necessarily means that, while the . . . General Order may give police administration a framework whereby commanders may evaluate officer conduct and job performance, it sheds no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment. . . ." *Id*. at 455.  Therefore, the Court found that whether the officer's conduct conformed with the internal general orders concerning the use of force "was irrelevant to the jury's determination of whether his actions . . . were 'objectively reasonable' under the Fourth Amendment." *Id*. at 455; *see also Scott v. Suelter*, 2013 WL 2181128, at *3 (C.D. Ill. May 20, 2013) (holding that the plaintiff could not introduce evidence of any police department general order, rule, or policy or evidence of any violation thereof to show that plaintiff's constitutional rights were violated under the Fourth Amendment).  The Cox Memorandum specifically cites to and measures Officer Watts' actions against Muncie Police Department policies, [Filing No. 65 at 9], and in doing so, the Cox Memorandum evaluates officer conduct and job performance.  Accordingly, for the reasons set forth in *Thompson*, the Cox Memorandum is irrelevant to a Fourth Amendment analysis. Therefore, Defendants' Motion to Strike the Cox Memorandum is **GRANTED** pursuant to Federal Rule of Evidence 401, and the Cox Memorandum, [Filing No. 65 at 7-10], is **STRICKEN**.

### III.
### BACKGROUND

The following factual background is set forth pursuant to the standards detailed in Part I. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

On July 21, 2015 Plaintiff Charles Herschel's estranged wife Rhonda Herschel informed him that she had not been making house payments with money he provided, as they had previously agreed. [Filing No. 61-1 at 2.] That day, he was at the house in question doing landscaping with his girlfriend when he went into the garage to take a break. [Filing No. 61-1 at 5.] After Ms. Herschel informed Mr. Herschel that she needed money, they had a verbal "confrontation in the kitchen," [Filing No. 61-1 at 7], during which he threw up his hands and told her that he was done trying to help her and that he would "come and get the rest of [his] stuff," including his racecar. [Filing No. 61-1 at 6.] As the verbal confrontation continued, Mr. Herschel walked through the house and out the front door. He was "pretty fumed" and informed his estranged wife that she no longer needed to worry about taking care of the plants because he "took care of them for her." [Filing No. 61-1 at 8-9.] As he left, he "took all the flowerpots and threw them," dumping all of the flowers out and said, "Here you go, I'm leaving." [Filing No. 61-1 at 9.] At some point during the verbal confrontation, Rhonda asked the couple's son to call the police, which he did. [Filing No. 61-1 at 9.]

*1. Mr. Herschel's Arrest*

That evening at approximately 7:25 p.m., Officer Aaron Watts responded to a 911 dispatch that there was a physical disturbance with people fighting at 2809 West Twickingham Drive. [Filing No. 61-4 at 1; Filing No. 65 at 2; Filing No. 65 at 30.] En route to the residence, Officer Watts was stopped by a man in a driveway three houses west of 2809 West Twickingham Drive who said there was a disturbance going on down the street. [Filing No. 61-2 at 5.] As he arrived at the house to respond to the call, Officer Watts was wearing a body camera. [Filing No. 65 at 30-31.]

Upon arriving at the house, Officer Watts got out of his squad car and encountered a man and a woman standing outside a vehicle in front of a house, and a woman sitting inside the vehicle with the door open. [Filing No. 62-1 at 0:28-0:33.] As he approached the individuals, Officer Watts asked, "What's going on?" [Filing No. 62-1 at 0:38.] An individual who was later revealed to be Mr. Hershcel replied, "There ain't a damn thing going on . . . [inaudible] . . . conversation going on." [Filing No. 62-1 at 0:40.] An individual who was later revealed to be Ms. Herschel then approached Officer Watts and said "Look," and gestured toward the house and various pots and overturned plants on the ground. [Filing No. 62-1 at 0:42.] Mr. Herschel then gestured with his arms as he said to Officer Watts, "You see that? All that's mine. And I f---ed it all up. That's perfectly fine. I bought it. I planted it." [Filing No. 62-1 at 0:48.] Officer Watts then said to Mr. Herschel, "Hey. Stop yelling," to which Mr. Hershel retorted, "Don't yell at me." [Filing No. 62-1 at 0:50-0:52.]

Officer Watts then ordered Mr. Herschel to put his hands behind his back. Mr. Herschel asked, "For what?" and Officer Watts again ordered him to put his hands behind his back. [Filing No. 62-1 at 0:55-0:56.] As Officer Watts handcuffed Mr. Herschel, Mr. Herschel continued, "for telling – asking you not to yell at me?" [Filing No. 62-1 at 1:00.] While Officer Watts handcuffed Mr. Herschel, Mr. and Ms. Herschel continued to argue with each other. [Filing No. 62-1 at 1:00-1:10.] During this time, Officer Watts accused Mr. Herschel of drinking and Mr. Herschel said that he had not had anything to drink. [Filing No. 62-1 at 1:20.] "Then why are you acting like an absolute idiot?" asked Officer Watts. [Filing No. 62-1 at 1:27.] Mr. Herschel replied, "because I haven't had my medication." [Filing No. 62-1 at 1:27.] As Officer Watts continued to attempt to handcuff Mr. Herschel, he instructed, "Release your hands. Relax your hands. Quit pulling." [Filing No. 62-1 at 1:27.]

After handcuffing Mr. Herschel, Officer Watts instructed him to sit on the ground, which he did, before telling Officer Watts, "I don't have anything to say to you, sir." [Filing No. 62-1 at 1:48-1:55.] While Mr. Herschel was seated on the sidewalk, Officer Watts ascertained that the woman in the parked vehicle was Mr. Hershel's girlfriend, while the woman outside of the vehicle was Mr. Herschel's wife. [Filing No. 62-1 at 2:00-2:01.] Ms. Herschel began explaining to Officer Watts what occurred with the flower pots. [Filing No. 62-1 at 2:10.] Officer Watts then said, "We got a call that you were physically hitting each other and everything," to which Ms. Herschel replied, "Oh, no. . . He [inaudible] the sh-t out of me." [Filing No. 62-1 at 2:18-2:22.] She went on to explain to Officer Watts that Mr. Herschel "just went crazy" and that he was out of his pain medicine and has "a lot of pain issues," including his shoulder. [Filing No. 62-1 at 2:38-2:54.]

Officer Watts then took down the names and dates of birth of Mr. and Ms. Herschel and Mr. Herschel's girlfriend, Melissa Alexander. [Filing No. 62-1 at 3:20-4:07.] As Officer Watts called the individuals' names and birthdays into his radio, Mr. Herschel called out, "Hey, can you loosen these up?" [Filing No. 62-1 at 4:30.] As he stood Mr. Herschel up, Officer Watts said, "Right now, you're under arrest for disorderly conduct and resisting law enforcement, ok?" [Filing No. 62-1 at 4:50-4:52.] Mr. Herschel denied resisting arrest and then said, "I gotta take some medication before I leave." [Filing No. 62-1 at 4:52-5:22.] Officer Watts then conducted a search of Mr. Herschel's pockets, during which time Mr. Herschel called out, "You happy?" and Officer Watts instructed him to stop. [Filing No. 62-1 at 5:34-5:36.] After pulling two pills out of Mr. Herschel's pocket, Officer Watts asked, "What are these?" [Filing No. 62-1 at 5:37.] Mr. Herschel then asked, "Are these Tylenol?" to which Ms. Herschel replied, "It's not Tylenol." [Filing No. 62-1 at 5:48-6:00.]

As Officer Watts continued searching Mr. Herschel, Officer Eric Small arrived on the scene. [Filing No. 62-1 at 6:38; Filing No. 62-4 at 0:01-0:30.] Officer Watts asked Officer Small if he would hold Mr. Herschel because Mr. Herschel was bleeding, at which point, Mr. Herschel stated, "I'm bleeding because he's got these f---ing handcuffs on so tight and I asked him to loosen 'em up." [Filing No. 62-1 at 6:42-6:48; Filing No. 62-4 at 0:35-0:38.] Officer Small then began searching Mr. Herschel and Mr. Hershel stated that he needed "to take some medicine before I leave – anxiety meds." [Filing No. 62-4 at 0:55-0:59.] Officer Small replied that he was not going to give Mr. Herschel any medicine but that he would check the handcuffs. [Filing No. 62-4 at 1:02-1:22.] Officer Small informed Mr. Herschel that he could "get a whole finger between each one" of the handcuffs so they were "good." [Filing No. 62-4 at 1:30-1:33.] Officer Small then continued searching Mr. Herschel's pockets. [Filing No. 62-4 at 1:30-2:06.]

Officer Small was still searching Mr. Herschel, who was facing the squad car, as Officer Watts approached the two. [Filing No. 62-4 at 0:55-0:59.] Officer Small asked Mr. Herschel, "Where are you bleeding from?" [Filing No. 62-4 at 2:05.] Mr. Herschel responded, "I don't know. F---ing check it out," and moved his arms with his hands still in handcuffs straight back behind him. [Filing No. 62-1 at 8:16; Filing No. 62-4 at 2:05-2:08.] Mr. Herschel continued, "I can't see the f---ing – can I see back there?" [Filing No. 62-4 at 2:05-2:11.] As he spoke, Mr. Hershel, whose back was facing Officer Small, swiftly turned his head and torso to his left, looking behind him and looked down at his handcuffs and then up at Officer Small. [Filing No. 62-1 at 8:18.] As he did so, he stepped his left foot forward. [Filing No. 62-1 at 8:18.] Officer Small turned Mr. Hershel back around and said, "You can't see back here." [Filing No. 62-4 at 2:11.] Shortly thereafter, Officer Small put Mr. Herschel in the back of the squad car. [Filing No. 62-4 at 2:40.]

Before leaving the scene, Officer Watts and Officer Small spoke with Ms. Herschel about what medicine had been in Mr. Herschel's pockets and about the possible source of the blood they found on him. [Filing No. 62-1 at 2:41-5:12.] Officer Small noted that Mr. Herschel had many scabs on his body and Officer Watts speculated that one of them could have come open when he had Mr. Herschel sit on the ground. [Filing No. 62-1 at 5:12-5:20.]

### 2. *Mr. Hershel's Transportation to and Arrival at the Delaware County Jail*

Officer Small transported Mr. Herschel to jail. [Filing No. 61-1 at 16.] Upon arriving at the jail, Officer Watts opened the door to the squad car and instructed Mr. Herschel to get out of the car. [Filing No. 62-2 at 0:31-0:40.] Thereafter, Officer Watts began to lead Mr. Herschel, who was handcuffed, toward the jail door. [Filing No. 62-2 at 0:44.] During this time, Officer Watts asked Mr. Herschel, "You have any other pills on you?" [Filing No. 62-2 at 0:57.] Mr. Hershel replied that he had "just the two Tylenol," to which Officer Watts replied, "Those are not Tylenol." [Filing No. 62-2 at 1:00-1:02.] Mr. Herschel then commented that they must have been Gabapentin, and Officer Watts agreed that they were. [Filing No. 62-2 at 1:04.] Mr. Herschel then said, "I'm prescribed those," and Officer Watts said, "No, you're not. Your wife is." [Filing No. 62-2 at 1:06-1:08.] Mr. Herschel said, "No, I am, too - by the Cleveland Clinic." [Filing No. 62-2 at 1:09.] Officer Watts then opened the door to the jail and led Mr. Herschel through it as he said, "Ok." [Filing No. 62-2 at 1:11.]

As they entered the jail, Mr. Herschel said, "You f---ing telling me what I am and am not? Do you know? Do you live there?" [Filing No. 62-2 at 1:12-1:16.] Officer Watts and Mr. Herschel then turned right, after walking around a half-wall in the jail. [Filing No. 62-2 at 1:16.] As they did so, Officer Watts said, "You do not have a prescription on you so – " [Filing No. 62-2 at 1:16-

1:19.] Mr. Herschel replied, "Well they are in the cabinet. I was at my residence." [Filing No. 62-2 at 1:19-1:22.]

After walking to the other side of the half wall, Officer Watts instructed Mr. Herschel to have a seat. [Filing No. 62-2 at 1:22.] On that side of the half wall, there was a chair directly in front of Mr. Herschel. [Filing No. 62-2 at 1:22.] Mr. Herschel then began to turn around to face Officer Watts, and Officer Small appeared in the doorway. [Filing No. 62-2 at 1:23.] Officer Watts again instructed Mr. Herschel to have a seat. [Filing No. 62-2 at 1:23.]

As Mr. Herschel turned to his right, Officer Watts had his left hand on Mr. Herschel's arm. [Filing No. 62-6 at 0:08.] One second later, Officer Watts had both hands on Mr. Herschel's upper arms. [Filing No. 62-6 at 0:08.] As Officer Watts turned his back to the camera in the jail, [Filing No. 62-6 at 0:10], Officer Small entered the doorway to the jail, [Filing No. 62-5 at 14:28.] As Officer Small stepped into the doorway, Officer Watts was standing behind Mr. Hershel and had his right arm around Mr. Herschel's neck. [Filing No. 62-5 at 14:28.] Officer Watts then used his left hand to pull his right hand back and pulled Mr. Herschel's neck back. [Filing No. 62-5 at 14:28-14:30.] Officer Watts then pulled Mr. Hershel down to the ground, toward both men's left side. [Filing No. 62-5 at 14:31.] As Mr. Herschel moved to the ground, Officer Watts was positioned over him. [Filing No. 62-5 at 14:31.]

While Officer Watts had Mr. Herschel on the ground, Officer Small walked into the jail. [Filing No. 62-5 at 14:37.] Officer Watts then said to Officer Small, "Have them come in here." [Filing No. 62-5 at 14:40.] Officer Small then walked toward a door, before returning to Officer Watts and Mr. Herschel. [Filing No. 62-5 at 14:42.] While still on the ground, Officer Watts said to Mr. Herschel, "That's not how this is going to work. You understand? That's not how it's going to work." [Filing No. 62-5 at 14:47-14:50.] Four other officers then came through the door and

surrounded Officer Watts and Mr. Herschel and helped them off the ground. [Filing No. 62-5 at 14:52.] The other officers then led Mr. Herschel, still in handcuffs, out of the room. [Filing No. 62-5 at 15:01.]

### 3. *The Lawsuit*

As a result of these incidents, Mr. Herschel filed suit against Officers Watts and Small, raising the following claims:

- False arrest, and

- Excessive force, in violation of 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution,

[Filing No. 1-1.][2] Defendants moved for summary judgment, and that Motion is now fully briefed[3] and ripe for the Court's review.

---

[2] Although Mr. Herschel initially brought claims against the Delaware County Sheriff and Does 1-5, those claims were dismissed on April 10, 2018. [Filing No. 51.]

[3] In his response brief in opposition to Defendants' Motion for Summary Judgment, it appears that Mr. Herschel argues that he too is entitled to summary judgment. (Filing No. 64 at 2 stating, "Whilst the Defendants' have their issue to preclude summary judgment, the Plaintiff asserts that they are entitled to summary judgment, and support the same"). However, Mr. Herschel neither styled his response as a cross-motion for summary judgment nor filed the document as such in CM/ECF. Moreover, Local Rule 7-1 provides that motions must be filed separately, and that a "motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court." Therefore, the Court declines to analyze Mr. Herschel's response brief as a cross-motion for summary judgment. Even if Mr. Herschel had properly filed a cross-motion for summary judgment, he would not be entitled to summary judgment on any of his claims for the reasons set forth herein.

Prior to analyzing the arguments in this case, the Court makes the additional observation that Mr. Herschel's brief is confusing, meandering, and replete with typographical errors and fragmented sentences. In addition, Mr. Herschel's brief contains a screen shot of a Microsoft Word document without any clue as to what the screen shot purports to show. [Filing No. 64 at 14.] At times, Mr. Herschel's brief contains lengthy portions of text which appear to be quotations from depositions or large excerpts from Defendants' brief that are not clearly marked as such. Other passages feature text that is highlighted or italicized for no stated reason. Such elements made this Court's review of Mr. Herschel's brief unnecessarily cumbersome and necessitated more effort on the part of this Court than should be required given that Mr. Herschel is represented by counsel in this matter.

**IV.**

**DISCUSSION**

**A. False Arrest**

Defendants argue that they are each entitled to summary judgment on Mr. Herschel's false arrest claim. [Filing No. 61 at 7.] The Court separately discusses Mr. Herschel's false arrest claim as it relates to each officer.

*1. False Arrest Claim against Officer Watts*

Defendants argue that probable cause existed for Officer Watts to arrest Mr. Herschel for all three of the charges at issue in this case as follows:

- probable cause existed to arrest Mr. Herschel for resisting law enforcement because Mr. Hershel "stiffened his arms when Officer Watts attempted to handcuff him," as demonstrated by the video footage where Officer Watts instructed Mr. Herschel to loosen his arms and by Mr. Hershel's deposition where he "acknowledged that he may not have moved his arms together in the manner expected by Officer Watts because he had an undisclosed problem with the ulnar nerve in his left arm;"

- probable cause existed to arrest Mr. Herschel for disorderly conduct because the video footage demonstrates that his non-political speech consisted of "yelling" that "interfered with Officer Watts' attempt to gather information from Rhonda regarding the circumstances of the call," followed by Mr. Herschel remaining "belligerent" and yelling back after Officer Watts instructed him "to stop yelling so that he could gather information regarding the domestic disturbance;" and

- probable cause existed to arrest Mr. Herschel for possession of a legend drug because two Gabapentin pills "were found loose in his pocket, rather than in a labeled prescription

13

container," and Mr. Herschel admitted that the pills belonged to Ms. Herschel, not to him.

[Filing No. 61 at 8-13.]

Although Defendants argue that "probable cause existed for each of the three charges" for which Mr. Herschel was arrested, Defendants also contend that all "that is required to defeat Plaintiff's false arrest claim is probable cause for one charge." [Filing No. 61 at 13.]

In response, Mr. Herschel alleges that "there was probable cause lacking" for each of the three charges at issue in this case. [Filing No. 64 at 6.] First, he argues that there is a "dispute of material fact" regarding the disorderly conduct charge because "[t]here were the core facts stated by Officer Watts, that the dispatch was for a physical Disturbance, but there was no physical disturbance," [Filing No. 64 at 6], and that broken pots do not constitute substantial damage to property under Indiana's disorderly conduct statute, [Filing No. 64 at 9]. Further, Mr. Herschel contends that there was no evidence "that there were those that flagged down Watts whilst en route" because "the audio from the body cam has no such content," [Filing No. 64 at 6], and all that supports this contention are "naked assertions made by the Officer Watts," [Filing No. 64 at 10.] In addition, Mr. Herschel points out that "there was the matter of the arrest being made immediately upon [Officer Watts'] arrival at the residence," and contends that "there was immediate compliance" with "the authority of the police officers." [Filing No. 64 at 6-8.] With respect to the charge for resisting arrest, Mr. Herschel points to his "ulnar nerve issues in the left arm" and contends that "there was nothing asked by Watts to ascertain a possible problem that would preclude the response expected by Watts." [Filing No. 64 at 7.] In addition, he contends that "[t]here is a problem with Officer Watts meeting all the elements, specifically intent for Resisting Law Enforcement." [Filing No. 64 at 9.] With regard to the charge regarding possession of a legend drug, Mr. Herschel contends that his possession of the pills "was a non issue *but for*

the bad first arrest of Watts." [Filing No. 64 at 8.] Finally, in response to Defendants' argument that there need only be probable cause for one offense, Mr. Herschel points to a "memorandum for the Chief of Police" written on August 4, 2015 by Captain Steve Cox, which Mr. Hershel contends "cast[s] serious doubt with regard to presence of the required probable cause and the ability of Officer Watts to have met all the elements of the respective charges." [Filing No. 64 at 12.]

In their reply brief, Defendants contend that Mr. Herschel "offers a scattered series of statements completely void of any citation to legal authority to support his arguments." [Filing No. 66 at 12.] Specifically, Defendants argue that the exclusionary rule does not apply to civil Section 1983 cases. [Filing No. 66 at 11.] Defendants then reiterate their argument that there was probable cause to arrest Mr. Herschel for disorderly conduct and contend that Mr. Herschel "mischaracterizes the facts with his discussion of Watts' testimony that he was flagged down by citizens regarding the disturbance at the Herschell (sic) residence" because Officer Watts' sworn testimony constitutes "evidence that such contacts occurred," and Mr. Herschel "offers only speculation to defeat that established fact, and such speculation is plainly insufficient to create a dispute of fact." [Filing No. 66 at 12.]

Turning first to the issue of Mr. Herschel's arrest for disorderly conduct, under Indiana law, a person commits disorderly conduct when he or she "recklessly, knowingly, or intentionally: (1) engages in fighting or in tumultuous conduct; (2) makes unreasonable noise and continues to do so after being asked to stop; or (3) disrupts a lawful assembly of persons." Ind. Code § 35-45-1-3(a). Under the second subpart, "[t]o convict for disorderly conduct, the trier of fact must find that there was unreasonable noise, followed by an admonition to stop, which was in turn followed by more unreasonable noise." *Martin v. State*, 499 N.E.2d 273, 275 (Ind. Ct. App. 1986). The Indiana Supreme Court has held that this subpart "is aimed at the intrusiveness and loudness of

expression, not whether it is obscene or provocative," and went on to observe that "one could violate the section by reading the scriptures in an unreasonably loud manner, or exploding firecrackers in the middle of the night." *Ruiz v. State*, 88 N.E.3d 219, 225 (Ind. Ct. App. 2017) (quoting *Price v. State*, 622 N.E.2d 954, 960 n.6 (Ind. 1993) (internal citations omitted)).

Despite Mr. Hershel's criticism of Defendants' discussion of political speech as "esoteric," [Filing No. 64 at 10], "Indiana has recognized that there are significant limits on what facts can properly support a disorderly conduct arrest for loud or offensive speech, where the speech is political in nature," *Griggs v. City of Fort Wayne*, 2017 WL 4181142, at *10 (N.D. Ind. Sept. 21, 2017). Where an individual's expression "focuses on the conduct of a private party, including the speaker himself, it is not political." *Anderson v. State*, 881 N.E.2d 86, 90 (Ind. Ct. App. 2008) (citation omitted). "The claimant bears the burden of proving that the expressive activity was not an abuse of his right to free speech by showing that his expression was political," at which point "the burden shifts to the State to show that it did not materially burden the claimant's opportunity to engage in political expression." *Id.* at 90 (citations omitted).

Mr. Hershel has made no attempt to meet his burden of showing that his speech was political and, to the contrary, expresses confusion as to why Defendants discuss political speech at all. [Filing No. 64 at 10] ("This is properly part of [Defendants'] position?").] Therefore, the Court need only conduct a more basic analysis under Indiana's disorderly conduct statute to determine whether Mr. Hershel made unreasonable noise and continued to do so after being asked to stop.

On this point, there is no genuine issue of material fact. Officer Watts' body camera clearly shows that Mr. Hershel gestured with his arms as he said to Officer Watts, "You see that? All that's mine. And I f---ed it all up. That's perfectly fine. I bought it. I planted it." [Filing No. 62-1 at 0:48.] Thereafter, Officer Watts said to Mr. Hershel, "Hey. Stop yelling," and Mr. Hershel

replied, "Don't yell at me." [Filing No. 62-1 at 0:50-0:52.] In addition, in his deposition, Mr. Herschel testified that the interactions he had with his estranged wife just prior to Officer Watts' arrival on the scene had him "pretty fumed." [Filing No. 61-1 at 8-9.] Consistent with the foregoing, Mr. Herschel's encounter with Officer Watts prior to Officer Watts handcuffing him fits within Indiana's definition of disorderly conduct as it involved Mr. Herschel yelling, followed by an admonition to stop, followed by more yelling on his part. *See Martin*, 499 N.E.2d at 275. By itself, the evidence on Officer Watts' body camera is sufficient to show that there was probable cause to arrest Mr. Herschel for disorderly conduct. But the Court will briefly address an additional issue raised by Mr. Herschel.

Mr. Herschel makes much of Officer Watts' testimony that he was stopped on his way to the scene by a neighbor three houses west of 2809 West Twickingham Drive who said there was a disturbance going on down the street. [Filing No. 61-2 at 5.] He points out that Officer Watts' body camera did not capture this interaction, which is true. However, this is not enough to create a genuine issue of material fact. "Mere 'metaphysical doubt as to the material facts' is not enough" to create a genuine issue of material fact. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Moreover, setting aside the issue of observers and neighbors, as previously stated, the evidence on Officer Watts' body camera is enough to show that probable cause existed for Mr. Herschel's arrest.

As a result of finding that there was probable cause for Officer Watts to arrest Mr. Herschel for disorderly conduct, the Court need not consider the parties' various arguments concerning the charges for resisting arrest or possession of a legend drug. *See Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146 at 153 (2004); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 762 (7th Cir. 2006) ("probable cause to believe that

a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause")).  Officer Watts is therefore entitled to summary judgment on Mr. Herschel's false arrest claim against him.

Prior to turning to Officer Small's involvement in the arrest, the Court notes that Defendants raise a qualified immunity defense as an alternative ground for summary judgment. [Filing No. 61 at 20.]  The crux of Defendants' argument on this point is that even if probable cause did not exist to arrest Mr. Herschel, Defendants are nonetheless entitled to summary judgment because "the probable cause determination was certainly sufficiently close that an officer reasonably could have believed that probable cause existed, even if that belief ultimately was mistaken."  [Filing No. 61 at 21 (citations omitted).]  Mr. Hershel refutes this argument, arguing that Officer Watts made "cumulative" mistakes during the arrest.  [Filing No. 66 at 22.]

"A grant of qualified immunity is distinct from a victory on the merits, in that qualified immunity recognizes a right not to litigate." *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 912 n.8 (7th Cir. 2011) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 527-28 (1985)). "Substantive qualified immunity analysis encompasses two distinct questions: (1) whether defendants violated a constitutional right; and (2) whether that right was clearly established at the time of the challenged conduct." *Williams v. Cline*, 902 F.3d 643, 648 (7th Cir. 2018) (quotations omitted).  In other words, "[q]ualified immunity protects public employees who do not violate clearly established law." *Comsys, Inc. v. Pacetti*, 893 F.3d 468, 474 (7th Cir. 2018).

Having found that probable cause supported Mr. Herschel's arrest, the Court need not analyze the parties' alternative arguments on qualified immunity.  Instead, the Seventh Circuit's reasoning in *Levan v. George* is instructive:  "[i]f the undisputed facts demonstrated that the officers had probable cause to arrest [the plaintiff], then he could not prevail on his claim of

wrongful arrest; the officers would be entitled to prevail on the merits, as well as on the first element of the qualified immunity defense." 604 F.3d 366, 369 (7th Cir. 2010). Such is the case here. Officer Watts had probable cause to arrest Mr. Herschel, and therefore, in conducting the arrest, Officer Watts did not violate Mr. Herschel's constitutional rights. As such, Mr. Herschel has failed to meet his burden under the prevailing test for qualified immunity, and Officer Watts is entitled to summary judgment not only on the merits, but also on the grounds of qualified immunity.

For the forgoing reasons, Defendants' Motion for Summary Judgment, [Filing No. 60], is **GRANTED** as to Mr. Herschel's false arrest claim against Officer Watts.

### 2. *False Arrest Claim against Officer Small*

With regard to Officer Small, Defendants argue that he "lacked personal involvement" in Mr. Herschel's arrest and that "Officer Watts had already formed his understanding of the probable cause leading to Plaintiff's arrest for resisting law enforcement and disorderly conduct by the time Officer Small arrived on the scene." [Filing No. 61 at 14.]

In response, Mr. Herschel states that Defendants' argument that Officer Small lacked personal involvement in his arrest "is a correct statement for this part of the case." [Filing No. 64 at 13.]

In their reply brief, Defendants argue that Mr. Herschel "essentially has conceded that Officer Small lacked involvement in Plaintiff's arrest and is entitled to summary judgment on this portion of Plaintiff's claim." [Filing No. 66 at 14.]

Officer Small is entitled to summary judgment on Mr. Herschel's false arrest claim for a number of reasons. First, as the Court previously found, probable cause existed to arrest Mr. Herschel.

Second, the Court agrees that the facts most favorable to Mr. Herschel do not show the requisite level of personal involvement on the part of Officer Small to hold him liable for false arrest. Officer Small arrived on the scene well after Officer Watts had already arrested Mr. Herschel, [Filing No. 62-1 at 6:38; Filing No. 62-4 at 0:01-0:30], and thereafter, Officer Small held Mr. Herschel, searched his pockets, and placed him in the squad car. At most, Officer Small was Mr. Herschel's temporary custodian, which is insufficient personal involvement to hold Officer Small liable for false arrest. *See Morfin v. City of E. Chicago*, 349 F.3d 989, 1000-01 (7th Cir. 2003) (finding that an officer whose only involvement with plaintiff was to transport him for booking was a temporary custodian and nothing else, which did not suffice to hold the officer liable for alleged constitutional violations); *Maltby v. Winston*, 36 F.3d 548, 559 (7th Cir.1994) (holding that sheriff who transported and otherwise acted as custodian of arrestee could not be liable for alleged constitutional violation of arrest without probable cause). Moreover, Mr. Herschel admits that Officer Small lacked personal involvement in his arrest. Therefore, Officer Small is entitled to summary judgment on Mr. Herschel's false arrest claim because he lacked sufficient personal involvement in the same.

Lastly, having found that probable cause supported Mr. Herschel's arrest, Officer Small is immune from suit for the same reason that Officer Watts is - Mr. Herschel has failed to meet his burden under the prevailing test for qualified immunity because no constitutional violation occurred incident to his arrest.

For the forgoing reasons, Defendants' Motion for Summary Judgment, [Filing No. 60], is **GRANTED** as to Mr. Herschel's false arrest claim against Officer Small.

**B. Excessive Force**

Defendants also move for summary judgment on Mr. Herschel's excessive force claim. [Filing No. 61 at 7.] The Court discusses Mr. Herschel's excessive force claim as it relates to each officer in turn.

### 1. Excessive Force Claim against Officer Watts

Defendants argue that "Officer Watts did not use excessive force in his interaction with" Mr. Herschel. [Filing No. 61 at 17.] Instead, Defendants contend that as Officer Watts entered the jail, Mr. Herschel became "argumentative and hostile" and "suddenly jerked his arm away from Officer Watts, spun around to face him, and moved as if he was going to kick, head-butt, or spit at Officer Watts." [Filing No. 61 at 18.] Based on these actions, Defendants argue that "Officer Watts believed he was in imminent danger of [Mr. Herschel] using force against him" and in order to prevent Mr. Herschel "from using force against him, Officer Watts secured [Mr. Herschel's] neck and head and took him to the ground." [Filing No. 61 at 18.] Defendants argue that Mr. Herschel's "actions and words demonstrated to Officer Watts that he did not submit to his authority and that reasonable force was necessary to obtain control of the situation." [Filing No. 61 at 19.]

In response, Mr. Herschel contends that "Timing remains a material [point] in the instant matter" and points to Officer Watts' testimony that Officer Watts put Mr. Herschel on the ground within 20 seconds of entering the jail. [Filing No. 64 at 18.]

In their reply brief, Defendants point out that Mr. Herschel admits that he turned the corner of the counter and that the video footage "clearly demonstrates" that Mr. Herschel was facing Officer Watts when the force was used. [Filing No. 66 at 14-15.] In addition, Defendants reiterate that this situation was analogous to a number of cases in which courts "approved of officers using

a takedown or tackling maneuver on suspects exhibiting a range of forms of resistance." [Filing No. 66 at 15.]

"Excessive force claims are reviewed under the Fourth Amendment's objective reasonableness standard." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "The reasonableness of an officer's actions must be determined by examining the specific circumstances of the arrest, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Avina v. Bohlen*, 882 F.3d 674, 678 (7th Cir. 2018) (internal citations and quotations omitted).

The problem with Defendants' argument is that evidence in this matter must be viewed in the light most favorable to Mr. Herschel. The video evidence in this matter shows that Mr. Herschel was facing Officer Watts when the force occurred, but it also shows that Officer Watts had just instructed Mr. Herschel to sit on the chair that was behind him. In order to comply with this instruction, Mr. Herschel had to turn to face Officer Watts. What occurred between Mr. Herschel turning around and Officer Watts applying force to him was extremely fast and presents a fact issue as to whether Officer Watts' reaction to Mr. Herschel's actions – however those actions may be characterized – was reasonable. This is enough to defeat Officer Watts' Motion for Summary Judgment.

The Court also notes that this case is easily distinguishable from the cases Defendants present, which involve police force against individuals who were clearly resisting law enforcement, *see, e.g., Boothe v. Wheeling Police Officer Sherman (Star #155)*, 190 F. Supp. 3d 788, 799 (N.D. Ill. 2016) (in which a student "may have stopped resisting once she was on the ground, but, as the state court held beyond a reasonable doubt, she was resisting when [the officer]

was escorting her from the cafeteria"), or suspects who were not in custody, *see, e.g., Dawson*, 803 F.3d at 834 (finding that in a case brought by the father of a suspect "a reasonable officer under these circumstances could reasonably believe it was necessary to tackle [the father] to protect [the] Officer [] from [his] interference with a lawful arrest"); *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 487 (7th Cir. 2011) (finding that "controlling law would not have communicated to a reasonable officer the illegality of applying pepper spray to an arrestee who has ceased active, physical resistance for a couple of seconds but has not submitted to the officer's authority, has not been taken into custody and still arguably could pose a threat of flight or further resistance"). Unlike the plaintiffs in *Dawson* and *Brooks*, Mr. Herschel was in police custody and was handcuffed when Officer Watts applied force to him. And unlike the plaintiff in *Boothe*, it is far from clear from the video evidence that Mr. Herschel was resisting Officer Watts when the force occurred. In short, the evidence in this case shows the existence of a genuine issue of material fact as to the reasonableness of Officer Watts' belief about how and how much Mr. Herschel was resisting Officer Watts in the seconds before he was taken to the ground.

As a final matter with regard to Officer Watts, this case presents an instance in which a genuine issue of material fact precludes a qualified immunity defense at this stage because the factual dispute in question prevents this Court from determining whether Officer Watts violated a constitutional right. *See Williams*, 902 F.3d at 648; *Levan*, 604 F.3d at 370. Therefore, Defendants' Motion for Summary Judgment, [Filing No. 60], is **DENIED** as it relates to Mr. Herschel's excessive force claim against Officer Watts.

### 2. *Excessive Force Claim against Officer Small*

With regard to Officer Small, Defendants argue that Officer Small is entitled to summary judgment on Mr. Herschel's excessive force claim because he "was not involved in any use of

force against" Mr. Herschel.  [Filing No. 61 at 19.]  Specifically, Defendants argue that the "body camera footage from Officer Watts and Officer Small, as well as the jail surveillance video" shows that "[b]y the time [Officer Small] was able to respond to the situation, Officer Watts had [Mr. Herschel] under control."  [Filing No. 61 at 19.]

In his response brief, Mr. Herschel merely states that "Officer Eric Small passively stood by, permitting Officer Watts to act as he did in the matter, to the detriment of Charles Herschell (sic) on July 21, 2015, at the Delaware County Jail."  [Filing No. 64 at 21.]

In their reply brief, Defendants reiterate their argument that Officer Small lacked sufficient personal involvement to be held liable for Mr. Herschel's excessive force claim.  [Filing No. 66 at 16.]  Specifically, Defendants contend that "[b]y the time Officer Small realized something was going on, he was unable to intervene, and he immediately banged on the door to booking in order to obtain further assistance."  [Filing No. 66 at 16.]  Further, Defendants argue that "Officer Small had no reason to believe that a constitutional violation had occurred with which he was needed to intervene."  [Filing No. 66 at 16.]

Individual liability under § 1983 "requires personal involvement in the alleged constitutional deprivation."  *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).  A plaintiff "must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct."  *Id.* at 657 (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. . . . A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.") (emphasis in original)).  In a § 1983 action alleging excessive force, "a defendant police officer may be held to account both for his own use

of excessive force on the plaintiff, as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." *Sanchez v. City of Chicago*, 700 F.3d 919, 925-26 (7th Cir. 2012) (citations omitted). As a bystander, an officer "can be held liable under § 1983" if the plaintiff can show that the officer "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009) (citations omitted).

Therefore, Defendants' contention Officer Small "did not engage in any use of force" against Mr. Herschel, [Filing No. 61 at 19], misses the point. Regardless of whether Officer Small himself engaged in use of force, he can still be held liable for a failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers.

In *Abdullahi v. City of Madison*, for example, the Seventh Circuit considered a claim for the failure to intervene to stop excessive force. 423 F.3d 763 (7th Cir. 2005). In *Abdullahi*, an officer knelt on a Jamal Mohamed's shoulder or back for 30-40 seconds, causing Mr. Mohamed's death two minutes later. *Id.* at 769. In considering the liability of officers standing by on the scene, the Court of Appeals cautioned that the analysis for failure to intervene to stop excessive force "almost always implicate[s] questions of fact for the jury: 'Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" *Id.* at 774 (quoting *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)). Accordingly, the Court held that depending upon how a jury evaluated the evidence in the excessive force claim, "it could conclude, consistent with the evidence, that one or more of the other officers could and should have attempted to prevent Mohamed's injuries."

*Abdullahi*, 423 F.3d at 774.   (7th Cir. 2005).  In short, "given that the excessive force claim . . . is not amenable to summary judgment, the associated failure to intervene claims must go to trial as well."   *Id*. at 774.   The Court of Appeals also rejected the defendant's qualified immunity argument, finding that "since the very nature of" the force applied "remains undetermined, one can only speculate as to how visually obvious any violation of Mohamed's rights might have been."  *Id*. at 775.

> In other words, without knowing what [the officer who applied the force] did or how his conduct appeared to onlookers, it would be difficult to say that, as a matter of law, a reasonable officer could not have known that [his] conduct violated Mohamed's constitutional rights.  A jury should decide whether [the officer who applied the force's] actions would have made it clear to a reasonable officer that intervention was warranted, and, if so, whether [the onlookers] had a realistic opportunity to intervene.

*Id*. at 775.

*Abdullahi* may initially seem analogous to this case, but a closer looks reveals an important difference.  *Abdullahi* involved excessive force during a takedown and, more importantly, during the time period after the takedown – 30 to 40 seconds during which Mr.  Mohamed was held on the ground with an officer kneeling on his shoulder or back, causing his lung to collapse and, ultimately, his death.   By contrast, Mr. Herschel does not argue that what occurred after the takedown constitutes excessive force.   Rather, it is the takedown itself that is at issue in this case. With regard to Officer Small, then, the question of what occurred after the takedown is no consequence to Mr. Herschel's § 1983 excessive force claim.   Officer Small's opportunity to intervene was significantly narrower than that faced by the officers in *Abdullahi*, and this difference, combined with the undisputed evidence, makes this the rare case where a reasonable jury could not possibly conclude that Officer Small had sufficient time to intervene or was capable of preventing the harm caused by Officer Watts.

From beginning to end, the takedown took approximately 5 seconds. [Filing No. 62-6 at 0:09-0:14; Filing No. 62-5 at 14:28-14:31.] Video footage from the jail and from Officer Small's body camera reveal that he was in the doorway to the jail when the takedown began. [Filing No. 62-5 at 14:28.] Given the distance between Officer Small and Mr. Herschel and the speed of the takedown, no reasonable jury could conclude that Officer Small had sufficient time to intervene or was capable of preventing any harm caused by Officer Watts. The second necessary element – "a realistic opportunity to intervene to prevent the act from occurring" – is wholly unsupported by evidence here. *Lewis at 4*72. As such, Officer Small is entitled to summary judgment on Mr. Herschel's excessive force claim.

As a final matter, the Court notes that having found that Officer Small did not have sufficient time to intervene, Officer Small is immune from suit because no constitutional violation occurred incident to his failure to intervene. Therefore, Defendants' Motion for Summary Judgment, [Filing No. 60], is **GRANTED** as to Mr. Herschel's excessive claim against Officer Small.

## IV.
### CONCLUSION

For the reasons described herein, the Court **GRANTS** Defendants' Motion to Strike the Cox Memorandum, [Filing No. 65 at 7-10].

In addition, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment, [60], as follows:

The Court **GRANTS** Defendants' Motion as to:

- all claims for false arrest, and

- the excessive force claim against Officer Small.

The Court **DENIES** Defendants' Motion as to:

- the excessive force claim against Officer Watts.

The Court requests that the Magistrate Judge confer with the parties at his earliest convenience regarding possible resolution of the remaining claims.

Date: 10/17/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**